Brenda H. Entzminger
Nevada Bar No. 9800
**PHILLIPS, SPALLAS & ANGSTADT LLC**
504 South Ninth Street
Las Vegas, Nevada 89101
(702) 938-1510

*Attorneys for Defendant*
*Wal-Mart Stores, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| QUATRELA PATE, individually and as Guardian ad Litem of DE'JIOR PAYNE , a minor,<br><br>                    Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC. dba WAL-MART SUPERCENTER #2592; DOES 1 through 10, inclusive, and ROE BUSINESS ENTITIES 1through 10, inclusive,<br><br>                    Defendants. | Case No.: 2:12-cv-01377-JAD-PAL<br><br>**DEFENDANT WALMART STORES, INC.'S MOTION IN LIMINE TO EXCLUDE FROM TRIAL WITNESS, EVIDENCE AND DAMAGES NOT TIMELY DISCLOSED PER FRCP 26(a)(1)(A)(i), (ii) and (iii), BASED ON SELF-EXECUTING AND AUTOMATIC EXCLUSION SANCTIONS PURSUANT TO FRCP 37(c)(1)** |

Defendant WAL-MART STORES, INC., by and through its counsel of record, PHILLIPS, SPALLAS & ANGSTADT  LLC, hereby brings its Motion To Exclude From Trial Witnesse, Evidence and Damages Not Timely Disclosed Per FRCP 26(a)(1)(A)(i), (ii), and (iii), based on the Self-Executing and Automatic Exclusion Sanctions Pursuant to FRCP 37(c)(1).

**I.      INTRODUCTION**

        A.        FRCP Rule 37 Mandates Exclusion of the Witnesses, Evidence and Damages Plaintiffs
                  Disclosed AFTER the Close of Discovery

        This motion arises out of Plaintiffs' prejudicial and untimely efforts to cure their discovery deficiencies and missed deadlines. By this motion, Walmart seeks to exclude the witnesses, evidence and damages which were not timely disclosed by Plaintiffs pursuant to Rule 26(a)(1)(A)(i), (ii), and

(iii).  Plaintiffs made three supplements to Rule 26(a) disclosures, each served after the close of discovery, which identify new witnesses, new evidence and new damages.  (Dec. Entz., ¶¶6-8, Exhs. D, E, and F).  Not only are these disclosures untimely, and therefore subject to exclusion per Rule 37, it is undisputed that each of these disclosures was served <u>after the close of discovery</u>, and therefore Defendant was unable to undertake any discovery regarding these untimely disclosed witnesses, evidence and damages. Walmart respectfully seeks an Order of exclusion, precluding Plaintiffs' use at trial of the untimely disclosed witnesses, evidence and damages, as set forth in these post-discovery disclosures.

Courts in the District of Nevada routinely exclude damages claims, witnesses and evidence that are not timely disclosed pursuant to Rule 26(a). *See e.g.*, *Montilla v. Wal-Mart Stores, Inc.,* No. 2:13-cv-2348-GMN-VCF, 2015 WL 5458781, at * 3 (D.Nev. Sept. 16, 2015) (excluding over $86,000 in past medical expenses, accompanying records and bills, future surgery recommendation, and future damages claim due to untimely "supplements" after the close of discovery); *Smith, T. v. Wal-Mart Stores, Inc.*, No. 2:13–cv–1597–MMD–VCF, 2014 WL 3548206, at *3 (D.Nev. July 16, 2014) (excluding over $400,000 related to future surgery and excluding retained medical expert due to Plaintiff's untimely disclosure of damages months after the Rule 26(a)(1)(A)(iii) deadline; *Patton v. Wal–Mart Stores, Inc.*, No. 2:12–cv–2142–GMN–VCF, 2013 WL 6158461, at *5 (D.Nev. Nov. 20, 2013) (excluding $129,084 in medical bills, disclosed after the close of discovery); *Rios v. Wal-Mart Stores, Inc.*, No. 11–cv–1592 (D.Nev. Dec. 11, 2013) (excluding future damages related to recommended fusion surgery due to Plaintiff's failure to timely disclose future medicals in Rule 26(a)(1)(A)(iii) Disclosures); *Shakespear v. Wal-Mart Stores, Inc.*, No. 12–cv–1064, 2013 U.S. Dist. LEXIS 100644 (D.Nev. July 8, 2013) (excluding Plaintiff's two retained medical experts and excluding $228,000 in future medical expenses due to Plaintiff's untimely disclosure of said damages claim and supporting evidence on the expert disclosure deadline, which fell months after the Rule

26(a)(1)(A)(iii) deadline); *Olaya v. Wal-Mart Stores, Inc.*, 11–cv–0997, 2012 U.S. Dist. LEXIS 111079, at *10 (D.Nev. Aug. 7, 2012) (excluding $1.2 million in future medical expenses and future lost earnings because the plaintiff disclosed these damages claims months after Rule 26(a)(1)(A)(iii) Disclosures were due); *Baltodano v. Walmart Stores, Inc.*, No. 10–cv–2062, 2011 U.S. Dist LEXIS 98306 (D.Nev. Aug. 31, 2011) (excluding $429,000 in future medical expenses related to fusion surgery that was NOT timely disclosed as part of Plaintiff's Computation of Damages); *Tzvetanova v. Wal-Mart Stores, Inc.*, 2:12-cv-02069-RCJ-CWH (D.Nev. Aug. 6, 2013) (excluding expert witnesses, evidence and over $840,000 in damages claims for future cervical fusion surgery, loss of household services, loss of earning capacity, and past lost wages, for Plaintiff's failure to timely disclose said evidence and damages at or near the Rule 26(a)(1)(A)(iii) Computation of Damages deadline); *Smith, D. v. Wal-Mart Stores, Inc.*, No. 2:11-cv-01520-MMD-RJJ, 2012 WL 4051925, at * 3 (D.Nev. Sept. 13, 2012) (excluding $320,000 in damages related to a recommended fusion surgery and excluding retained medical expert who recommended surgery, due to untimely disclosure).

     B.    <u>The Procedural History Demonstrates that Plaintiffs Failed to Meet Their Discovery Obligations *During* the Discovery Period and the Tardy Disclosures at Issue are Untimely Efforts to Cure those Discovery Deficiencies</u>

**1.    Plaintiffs' Attempts to Reset Deadlines Failed Due to Lack of Diligence**

Plaintiffs failed to pursue written discovery or take a single deposition in this case. (Dkt. Filing No. 23). Plaintiffs sought to modify the Scheduling Order on two separate occasions, but both Motions were denied by Magistrate Judge Peggy A. Leen because Plaintiffs had failed to exercise any diligence in seeking to meet the Court's deadlines. Discovery opened on August 31, 2012. (Dkt. Filing No. 9). Per the Scheduling Order, the Court set a discovery cut-off date of January 30, 2013. (Dkt. Filing No. 9).

Plaintiffs filed a motion to extend deadlines on November 6, 2012. The Court denied this motion because Plaintiffs had failed to explain why they had conducted no discovery whatsoever in

the preceding months.  (Dkt. Filing No. 14).  After discovery closed, Plaintiffs filed a second "motion to extend" on February 8, 2013, which was really a motion to re-open discovery, given that the motion was filed *after* the discovery cut-off date of January 30, 2013.  (Dkt. Filing No. 19).  In that "second motion to extend," Plaintiffs sought to modify the Scheduling Order in order to permit her newly-retained counsel to "take the deposition of Derek Mitchell and a 'PMK' regarding stacking vitamins which fell [], as well as obtain documents and surveillance video from Walmart, take medical expert depositions, and retain a liability expert[.]"  (Dkt. Filing No. 23, 2:10-16).  Plaintiffs further argued that a modification of the Scheduling Order was justified because "Plaintiff Quatrela Pate's future medical care and needs are still unknown," and "prior counsel did very little to properly prepare this case for trial[.]" *Id.*

The Court declined to modify the Scheduling Order or permit any additional discovery.  In denying Plaintiffs' February 8, 2013 motion, Magistrate Judge Leen found that "Plaintiff was not diligent in conducting discovery while she had the opportunity to do so." *Id.* at 4. The Court explained that "carelessness is not compatible with a finding of diligence and offers no reasons for a grant of relief."  (Dkt. Filing No. 23) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  The Court applied the Ninth Circuit analysis, noting that "the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* at 4 (quoting *Johnson*, 975, F.2d at 609).  Magistrate Judge Leen held, "Plaintiff has simply not been diligent in pursuing discovery. Accordingly, [] Plaintiff's Motion to Extend Discovery Deadlines (Second Request) is Denied." *Id.* at 4:21-23.

### 2.    Plaintiffs' Violations of Court Orders Causing Protracted Case Delays

The Court ordered the parties to attend a settlement conference on August 29, 2013. Following that unsuccessful conference, Plaintiffs' second attorneys, the Galliher Law Firm, filed a motion to withdraw as counsel, which was granted by the Court on September 17, 2013.  (Dkt. Filing

No. 35).  As part of that Order, the Court ordered Plaintiffs to retain new counsel by October 16, 2013, or file a notice to proceed pro se.  (Dkt. Filing No. 35, 2:1-8).  The Court warned that a "[f]ailure to comply with this order may result in a recommendation to the District Judge for sanctions, including case-dispositive sanctions."  *Id.*  Plaintiffs neither retained new counsel nor filed the requested notice by the Court Ordered deadline.  (See Dkt. Filing No. 37).  Instead, on the deadline, Plaintiffs filed a request to extend the deadline to retain new counsel by 30 days.  Id.  On October 23, 2013, the court granted Plaintiffs' request, and issued a new deadline of November 22, 2013, by which to comply with the Order of September 17, 2013.  (Dkt. Filing. Nos. 35, 37).  Plaintiffs violated the Court's Orders.  On January 29, 2014, the Court issued an Order to Show Cause, demanding Plaintiffs to "show cause, in writing, why sanctions should not be imposed for her failure to comply with the court's orders (Dkt ## 32 & 37)."  (Dkt. Filing No. 38).  In its Order to Show Cause, the Court noted that "Plaintiff has now had more than five months to comply with the court's order.  A motion for summary judgment has been under submission for nearly ten months."  *Id.*  The Court further ordered that a "[f] ailure to comply with this order may result in sanctions, up to and including case-dispositive sanctions, that is, an order dismissing Plaintiff's case."  *Id.*

On February 7, 2014, Plaintiff filed a Response to the Order to Show Cause, making clear that with the pending motion for summary judgment, it was impossible for her to obtain an attorney.  (Dkt. Filing No. 40).  She thereby requested that the Court issue a ruling on Defendant's motion for summary judgment, so that she could retain new counsel.  *Id.*  On July 21, 2014, the Court issued an Order granting in part and denying in part, Defendant's motion for summary judgment.  (Dkt. Filing No. 42).  It would be another three full months before Plaintiffs retained new counsel.  (Dkt. Filing No. 43).

In light of these delays, the Court Ordered that the parties submit a status report "that details the status of this case, identifies all remaining parties and claims, explains the status of any event upon

which a stay is based, and states the status of any appeal and its effect on the remaining claims and parties." (Court Order, dated September 9, 2015). Plaintiffs ignored this Order altogether and as of the date of this filing, Plaintiffs have yet to submit the Court-Ordered Status Report. (See Docket Report).

C.    Plaintiffs' Belated Attempts to Cure Their Numerous Discovery Deficiencies, Through Untimely Rule 26(a) Disclosures, Warrant Exclusion Sanctions Pursuant to Rule 37(c)(1)

*After* discovery closed and *after* Plaintiffs retained new counsel who acknowledged that "prior counsel did very little to properly prepare this case for trial[,][1]" Plaintiffs identified new witnesses, new evidence and new damages claims which had not previously been disclosed, neither by the Rule 26(a)(1)(A) deadline of September 14, 2012, nor before the discovery cut-off date of January 30, 2013. Those new witnesses, evidence and damages were identified in "supplements" served on May 22, 2013, June 27, 2013, and July 11, 2013 – **months after discovery had closed** and months after Plaintiffs' efforts to reopen discovery had been explicitly rejected by Magistrate Judge Leen. (Dec. Entz., ¶¶6-8, Exhs. D, E and F).

This Motion seeks the exclusion from trial of any witness, evidence or damages, disclosed for the first time in the post-discovery cut-off disclosures. (Dec. Entz., ¶¶6-8, Exhs. D, E and F).

## II.    RULE 37(c)(1) MANDATES AUTOMATIC EXCLUSION OF ANY WITNESSES, EVIDENCE AND DAMAGES BEYOND THOSE DISCLOSED IN PLAINTIFFS' "SECOND SUPPLEMENT," SERVED ON NOVEMBER 30, 2012

A.    Case Background Facts

Plaintiff alleges to have been hit on her right hip by falling boxes while shopping at a Walmart store on June 8, 2011. On March 2, 2012, Plaintiff filed a complaint against Defendant on behalf of herself and her minor child. Despite consulting with numerous doctors over a period of at least two

---

[1] In Plaintiffs' "second motion to extend, counsel argued that "prior counsel did very little to properly

Continued on the next page

years, Plaintiff has yet to obtain any diagnosis that is consistent with an acute injury caused by this incident.  Of particular significance is Plaintiff's <u>first</u> treatment record at Centennial Hills Hospital from the date of the incident, where no scratch, bruise, discoloration or any other indicia of injury was discovered.  In fact, the examining doctor made a note that there was "NO APPARENT INJURY" and noted that Plaintiff's thigh and hip exhibited a "normal inspection."  This record is excerpted below:

_____

Continued from the previous page

prepare this case for trial[.]"  (Dkt. Filing No. 23, 2:15-16).

(Dec. Entz., ¶10).

      B.      <u>Plaintiffs' Rule 26(a) Disclosures DURING the Discovery Period</u>

            1.      **Plaintiffs' Initial Disclosures of Witnesses, Documents and Damages, Served on August 1, 2012**

Plaintiffs' NRCP 16.1 Disclosures, served on August 1, 2012, disclosed $117,544.88 in past medical expenses for Plaintiff Quatrela Pate's treatment charges, and disclosed $697.00 for Plaintiff D'Jior Pate's treatment charges.  (Dec. Entz., ¶3, Exh. A).  Like the Federal counterpart, NRCP 16.1 requires that parties identify all witnesses, evidence and "a computation of any category of damages claimed…making available for inspection [] as under Rule 34 the documents [] on which such computation is based, including materials bearing on the nature and extent of injuries suffered."  Nev. R. Civ. P. 16.1(a)(1)(A)-(C) (2014 Ed.). In their NRCP 16.1 Disclosures, Plaintiffs disclosed **874 pages of treatment and billing records** for Plaintiff Quatrela Pate.  (Dec. Entz., ¶3,; Exh. A, pp. 1-4). In that same August 1, 2012 Disclosure, Plaintiffs disclosed "knowledgeable healthcare provider" and Custodian of Records witnesses from **15 different treatment facilities** visited by Plaintiff Quatrela Pate.  (Dec. Entz., ¶3, Exh. A, pp. 5-10).  Per NRCP 16.1(a)(1)(C), Plaintiffs were required to disclose "a computation of any category of damages claimed," and indeed Plaintiffs disclosed only one category of damages: *past medical expenses only*.  (Dec. Entz., ¶3, Exh. A, pp. 10-11).

            2.      **Plaintiffs' First Supplement, Served on November 20, 2012 Added 11 Pages of Documents, 1 Treatment Facility Witness and $18,990.25 in Past Medical Expenses**

Based on Plaintiffs' NRCP 16.1 disclosures, Walmart removed this matter to federal court on August 3, 2012.  (Dkt. Filing No. 1).  Per the Scheduling Order, the parties' FRCP 26(a) Disclosures were due on September 14, 2012.  (Dkt. Filing No. 9).  Plaintiffs apparently relied on their NRCP 16.1 Disclosures as satisfying their Rule 26(a) obligations; Plaintiffs did not supplement their August 1 NRCP 16.1 disclosures until November 20, 2012.   (Dec. Entz., ¶4; Exh. B).    In their "First Supplement," served on November 20, 2012, Plaintiffs disclosed an additional 10 pages of billing

records and 1 'certificate of authenticity.' (Dec. Entz., ¶4;Exh. B, p. 3). That November 20, 2012 Supplement also disclosed a "knowledgeable healthcare provider" and Custodian of Records witness for 1 additional treatment facility: Fremont Emergency Services. (Dec. Entz., ¶4; Exh. B, pp. 10-11). Plaintiffs further updated Plaintiff Quatrela Pate's computation of damages to reflect $136,535.13 in total billings. (Dec. Entz., ¶4; Exh. B, pp. 11-12). The disclosure remained unchanged in disclosing a category of damages for *past medical expenses only*. (Dec. Entz., ¶4; Exh. B, p. 12).

> ### 3. Plaintiffs' Second Supplement, Served on November 30, 2012, Was the LAST SUPPLEMENT SERVED DURING DISCOVERY; This Supplement Disclosed Dr. Grover as an Expert Witness and Added 16 Pages of Records Related to that Expert Witness

>> a. *Plaintiffs' November 30, 2012 Supplement Disclosed <u>NO Additional Damages</u>, <u>NO Additional Category</u> of Damages, <u>NO Additional Treatment Records</u> or Billing Records, and <u>NO Additional Treatment Witnesses</u>*

Plaintiffs' November 30, 2012 Supplement was effectively an expert disclosure, pursuant to FRCP 26(a)(2)(B). (Dec. Entz., ¶5; Exh. C). The Supplement provided a written report by Dr. Jaswinder Grover, dated November 30, 2012, which was authored at the request of Plaintiffs' then-attorney, Mr. Bingham. (Dec. Entz., ¶5;Exh. C, pp. 15-17). The Supplement further disclosed a Curriculum Vitae for Dr. Grover, as well as his testimony list and fee schedule. (Dec. Entz., ¶5; Exh. C).

What is critical to this motion, however, is what is NOT included in this Supplement. There is no category of damages apart from past medical expenses. (Dec. Entz., ¶5; Exh. C). There are no damages apart from the $136,535.13 already disclosed. (Dec. Entz., ¶5; Exh. C). Moreover, there are no additional treatment records, billing records or treatment facility witnesses. (Dec. Entz., ¶5; Exh. C). Moreover, as detailed below, the expert report offers no opinion, reference or indication of any future care needs. (Dec. Entz., ¶5; Exh. C, pp. 15-17).

//

b. *Plaintiffs' Expert Report Did Not Reference Futures and the Expert Disclosure Has Never Been Supplemented*

It is likewise critical to this Motion to note that Plaintiffs' Expert's Report, disclosed and authored on November 30, 2012, offered NO future care opinions, NO future treatment recommendations, and failed to even reference any future care whatsoever. (Dec. Entz., ¶5; Exh. C, pp. 15-17). Plaintiffs never supplemented their expert disclosure during the discovery period, and even after the close of discovery, Plaintiffs have never served any supplement to this expert report in this case. (Dec. Entz., ¶12).

C. ***AFTER*** **Plaintiffs' Motions Were Denied by Magistrate Judge Leen, and *AFTER Discovery Had Closed*, Plaintiffs Disclosed New Witnesses, Records, Damages and Even An Additional Category of Damages**

1. *Plaintiffs' May 22, 2013 Disclosure Added **11 New Treatment Facilities** and 38 New Treatment Providers*

The additional disclosures are identified below in **Bold Print**:

| November 30, 2012 | **May 22, 2013 – 4 Months AFTER Discovery** |
|---|---|
| Centennial Hospital Treatment Provider and Custodian of Records | The names of **seven medical providers** and Custodian of records from Centennial Hospital |
| Shadow Emergency Treatment Provider and Custodian of Records | **Jimmy Shih, M.D. and Custodian of Records from Desert Radiologists** |
| Arminas Wagner, D.C., Nevada Chiropractic Rehabilitation Center | **PMK and Custodian of Records from Flamingo Emergency Services** |
| Portney Alexander, M.D. and Custodian of Records for Portney Medical Group | The names of **four medical providers** and Custodian of records from Valley Hospital |
| Las Vegas Radiology Treatment Provider and Custodian of Records | **Suresh J. Rodil, M.D.** and Custodian of records from Fremont Emergency Services |
| Gary LaTourette, M.D. and Custodian of Records for Dr. LaTourette | **Ammon G. Strehlow D.C.** and Custodian of records for Strehlow Radiology |
| Strehlow Radiology Treatment Provider and Custodian of Records | **Afshin Doust, M.D.** and Custodian of records for Mountain View Hospital |
| Dr. Grover, Dr. Rosler and Custodian of Records for Nevada Spine Clinic | Shadow Emergency Treatment Provider and Custodian of Records |
| Radiology Specialists Treatment Provider and Custodian of Records | The names of **seven medical providers** and Custodian of records for Radiology Specialists |
| Diagnostic Center of Medicine Treatment Provider and Custodian of Records | The names of **two medical providers** and Custodian of records for Diagnostic Center of Medicine |
| Mountain View Hospital Treatment Provider and Custodian of Records | Las Vegas Pharmacy Treatment Provider and Custodian of Records |

| | |
|---|---|
| Foot, Ankle and Lower Leg Center Treatment Provider and Custodian of Records | **Anthony Ricciardi, D.P.M.** and Custodian of records for Foot, Ankle and Lower Leg |
| Digestive Associates Treatment Provider and Custodian of Records | Gary LaTourette, M.D. and Custodian of Records for Dr. LaTourette |
| Valley Hospital Treatment Provider and Custodian of Records | The names of **two medical providers** and Custodian of records for Las Vegas Radiology |
| Las Vegas Pharmacy Treatment Provider and Custodian of Records | PMK and Custodian of records for Nevada Chiropractic Rehabilitation Center |
| Yoana Peteva, M.D., Sunrise Pediatrics and Sunrise Pediatrics Custodian of Records | Portney Alexander, M.D. and Custodian of Records for Portney Medical Group |
| Fremont Emergency Services Treatment Provider and Custodian of Records | Dr. Grover and Custodian of Records for Nevada Spine Clinic |
| Dr. Jaswinder Grover (disclosed as expert to offer opinions on "injuries," "causation of said injuries," and "causation and treatment for all of Plaintiff's medical providers" | **PMK and Custodian of Records for UMC Quick Care** |
| | **Hai Nguyen, M.D., Michael Brown, M.D., Inna Zdorovyak, PCP and Custodian of records for Southwest Medical Associates** |
| | **Kristine Supple, P.A., PMK and Custodian of Records for Community Memorial Hospital Laboratory** |
| | **PMK and Custodian of records for Matt Smith Physical Therapy** |
| | **PMK and Custodian of Records for Ronald Reagan Medical Center** |
| | **Sylvanna Guidotti, M.D., PMK and Custodian of records for Ventura County Medical Center and Santa Paula Hospital** |
| | **Richard Wagner, M.D., PMK and Custodian of Records for St. John's Regional Medical Center** |
| | **Nancy Sun, M.D., Richard Benedon, M.D., John Kudirka, M.D., Paul David, M.D., Christine Lau, M.D., Sheel Sanjiv, M.D., and PMK and Custodian of records for HCA Los Robles Hospital and Medical Center** |
| | **Saxena Samir, M.D., PMK and Custodian of records for Delmar Gardens of Green Valley** |

(Dec. Entz., ¶6; Exh. D, pp. 2-10).

//

//

//

2.    *Plaintiffs' May 22, 2013 Disclosure Added* **'FUTURE CARE NEEDS' TO THE EXPERT DISCLOSURE**

Plaintiffs' August 1, 2012 NRCP 16.1(a)(1)(A) Disclosure demonstrated that the only category of damages were past medical expenses. (Dec. Entz., ¶3; Exh. A). Plaintiffs' November 20, 2012 Disclosures likewise made clear that Plaintiffs' Rule 26(a)(1)(A)(iii) Computation of Damages included a category for past medical expenses only. (Dec. Entz., ¶4; Exh. B). Again, on November 30, 2012, when Plaintiffs supplemented their Rule 26(a) Disclosures, identifying Dr. Grover as a retained expert, they maintained that the only category of damages was past medical expenses. (Dec. Entz., ¶5; Exh. C). This fact was further solidified by Dr. Grover's November 30, 2012 expert report, which neither offered opinions on nor referenced any future care whatsoever. (Dec. Entz., ¶5, Exh. C, pp. 15-17).

Over eight months after Plaintiffs' Rule 26(a)(1)(A)(iii) Computation of Damages were due, over six months after the expert disclosure deadline, and over four months after discovery closed, Plaintiffs' May 22, 2013 Disclosure notes that Dr. Grover will testify regarding "her need for future medical care." (Dec. Entz., ¶6, Exh. D, p. 11). In a textbook bait and switch move, Plaintiffs used the discovery period to mislead Defendant that only past medical expenses of $136,000 are sought, so that Defendant would forego an IME and forego physician depositions. Plaintiffs omitted any reference to future medical expenses or future treatment in their Rule 26(a)(1)(A)(iii) Disclosures, omitted any reference to future care in Dr. Grover's November 30, 2012 report, omitted any reference to future care in their November 30, 2012 expert disclosure, and in response to Defendant's specific Rule 33 Interrogatory requesting information about future care recommendations, the cost thereof, and the provider recommending said treatment, Plaintiffs failed to provide any response regarding future care. (Dec. Entz., ¶9; Exh. G). Then – months AFTER all applicable Court deadlines passed, after their two efforts to reset deadlines failed, and months after discovery has closed – Plaintiffs disclosed that their expert would offer opinions on "need for future medical care." (Dec. Entz., ¶6; Exh. D).

        3.      *Plaintiffs' May 22, 2013 Disclosure Added **1,023 New Treatment and Billing Records** From Previously Undisclosed Facilities and Doctors*

The 1,023 new records produced by Plaintiffs reflect treatment and billing charges obtained and incurred in 2011 and 2012, many months PRIOR to the close of discovery. (Dec. Entz., ¶6, Exhs. D, pp. 13-15). Moreover, many of these treatment records were for **<u>treatment providers and facilities that Plaintiffs had failed to disclose during the discovery period</u>**, such as UMC, Southwest Medical Associates, Los Robles Hospital, Ventura County Medical Center, Delmar Gardens Green Valley, Matt Smith Physical Therapy, Flamingo Emergency Services, St. John's Regional Medical Center, Community Memorial Hospital, Desert Radiologists, and Ronald Reagan Medical Center. (Dec. Entz., ¶6; Exh. D, pp. 2-10). Thus, there can be no justification, let alone *substantial justification*, for waiting until months after discovery closes to produce these records. While ambushing Defendant with over 1,000 additional treatment records, 11 additional treatment facilities, and a cryptically vague new claim for future damages months after the close of discovery would be quite egregious on its own, incredibly enough, the ambush continued.

        4.      *Plaintiffs' June 22, 2013 Disclosure Added an Additional 83 New Treatment and Billing Records*

Plaintiffs' "Second Supplement," served on June 22, 2013, five months after discovery closed, identified 83 new records. (Dec. Entz., ¶7; Exh. E).

        5.      *Plaintiffs' July 11, 2013 Disclosure Added 2 New Treatment Facilities, 8 New Witnesses, and 78 New Treatment and Billing Records*

Plaintiffs' "Third Supplement," served **six months after the close of discovery**, disclosed two previously unidentified treatment facilities, eight additional witnesses, and 78 additional treatment and billing records. (Dec. Entz., ¶8; Exh. F).

//

//

//

1

## III.    LEGAL ARGUMENT

2

3

    A.    <u>Pursuant to FRCP 37(c)(1), This Court Should Exclude Any Witnesses, Damages and Evidence That Was Not Disclosed in Plaintiffs' Disclosures Made *During the Discovery Period*</u>

4

5

    Throughout the discovery period, Defendant tailored its discovery decisions, including the

6

decisions of what depositions to take and not to take, based upon: (1) Plaintiffs' Rule 26(a)(1)(A)(i)

7

witness disclosures; (2) Plaintiffs' Rule 26(a)(1)(A)(ii) Document disclosures; (3) Plaintiffs' Rule

8

26(a)(1)(A)(iii) Computation of Damages Disclosures; (4) Plaintiffs' Supplements during the

9

discovery period; (5) Plaintiffs' November 30, 2012 Expert Disclosure; and (6) Plaintiffs' Rule 33 and

10

Rule 34 Discovery Responses.  Plaintiffs cannot be allowed to circumvent the Scheduling Order

11

deadlines, Rule 26's requirements, or Magistrate Judge Leen's Orders by ambushing Defendant with

12

numerous additional witnesses, over 1,000 additional documents, and additional damages **after the**

13

**close of discover**y.  These added witnesses and documents could have and should have been disclosed

14

*during* the discovery period, but they were not.  Having failed to disclose these treatment providers,

15

facilities and records until after the close of discovery, Plaintiffs ensured Defendant would have no

16

opportunity to conduct any discovery regarding these new witnesses and records.

17

    Moreover, because Plaintiffs <u>never provided a Computation of Damages for any future</u>

18

<u>damages</u>, and instead disclosed only past medical expenses in their Rule 26(a)(1)(A)(iii) Disclosures,

19

she cannot sneak in evidence regarding "future care needs" opinions, as noted for the first time in

20

Plaintiffs' May 22, 2013 Disclosure.  Plaintiffs never served a supplement to Dr. Grover's November

21

30, 2012 expert report and never timely disclosed any supplement to their November 30, 2012 expert

22

disclosure.  Therefore, any effort to admit damages evidence related to future treatment, future

23

medical expenses or future care needs is absolutely proscribed by Rule 37(c)(1).

24

//

25

//

26

27

28

Pursuant to FRCP 26(a)(1)(A)(iii), each party seeking damages must:

> provide to the other parties [ ] a *computation of each category of damages claimed* by the disclosing party—who must also make available for inspection and *copying as under Rule 34* the *documents or other evidentiary material*, unless privileged or protected from disclosure, *on which each computation is based*, including materials bearing on the nature and extent of injuries suffered[.]

*See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (emphasis added).

Defendant has retained its expert, conducted discovery and undertaken decisions regarding settlement and trial preparation, in reliance on the accuracy of Plaintiff's Rule 26(a)(1)(A)(iii) Disclosures, Plaintiffs' Expert Disclosures and Plaintiffs' discovery responses.

Per Rule 37(c)(1), **any failure to timely disclose information required by Rule 26(a) or Rule 26(e) shall be excluded from trial**. Fed. R. Civ. P. 37(c)(1) (emphasis added). By Court Order, Plaintiff's Rule 26(a)(1)(A)(iii) Computation of Damages Disclosures were due to be disclosed on or before September 14, 2012. (Docket Filing No. 9, p. 1). Because Plaintiffs' Computation of Damages Disclosures, served on August 1, 2012, November 20, 2012, and November 30, 2012, each disclose only past medical expenses as a category of damages, Plaintiffs must be limited at trial to proffering evidence as to only those economic damages. Fed. R. Civ. Proc. 37(c)(1).

If Plaintiff were allowed to bypass the requirements set forth in Rule 26(a)(1)(A)(i)-(iii), Defendant would be denied the very purpose of Rule 26(a)(1)(A): to allow a defending party the opportunity to tailor its discovery to investigate, defend against or verify those witnesses, documents, and damages categories and amounts.

B.    Application of Ninth Circuit and District of Nevada Authority Compels Exclusion Pursuant to Rule 37(c)

In 1990, Congress adopted the Civil Justice Reform Act ("CJRA"), which was intended to curb litigation excesses and improve the efficiency of the federal courts. *See* 28 U.S.C. § 471 *et seq.*; *see also Beller v. United States,* 221 F.R.D. 689, 692 (D.N.M. 2003). To help implement these

reforms, changes were made in the Federal Rules of Civil Procedure to address "the dual problems of cost and delay." *Beller*, 221 F.R.D. at 692. Federal Rule of Civil Procedure 26, governing discovery deadlines, saw the "most significant changes." *Id.* at 693.

The revisions to FRCP 26, which included the introduction of automatic disclosures, specific deadlines and content restrictions for expert testimony and reports, and disclosure of trial evidence "eliminate[d] the former process of '*trial by ambush*,' and mandate[d] full disclosure of relevant *information necessary to evaluate the case or to prepare for trial at an early stage of the proceedings*." *Id.* (emphases added). Unless the failure to disclose is "substantially justified or harmless," the prescribed penalty for failing to comply with these requirements is that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial[.]" *See* Fed. R. Civ. P. 37(c)(1). The exclusion penalty is "self-executing" and "automatic." *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (noting that FRCP 37(c)(1) provides such a "*self-executing, automatic sanction* to provide a strong inducement for disclosure of material[,]" and affirming decision of district court precluding presentation of undisclosed evidence of damages) (*quoting Yeti by Molly, Ltd. v. Deckers Outdoors, Inc.*, 259 F.3d 1101, 1106 (9th Cir. 2001)) (emphases added).

> 1. **Pursuant To FRCP 37(c)(1), the Witnesses, Evidence and Damages That Were Not Timely Disclosed During the Discovery Period Must be Excluded**

Discovery closed on January 30, 2013. Despite Plaintiffs' excuses and admissions of the failures of prior counsel, the Court denied Plaintiffs' efforts to reset the deadlines in the Court's Scheduling Order. Based on Plaintiffs' damages claim of past medical expenses only, Defendant did not conduct an IME, and instead retained a medical expert to address the records, testimony and evidence adduced *during discovery*. (Dec. Entz., ¶13).

Defendant further relied upon the Orders of the Court, which ruled that excuses like "ongoing

treatment," and the failures of "prior counsel" did not warrant the resetting of any of the Court's deadlines. Despite those rulings, Plaintiffs chose to disclose additional witnesses, documents, and damages *after her Motions were denied*, apparently with the hopes that such ambushing tactics might intimidate Defendant into settlement.  As detailed *supra*, Plaintiffs' August 1, November 20, and November 30, 2012 Disclosures differ markedly from Plaintiffs' post-discovery disclosures, served on May 22, June 27, and July 11, 2013. The post-discovery disclosures added many treatment facilities, providers, witnesses, documents and damages that had not been discovery during the discovery period. Walmart relied on Plaintiffs' disclosures made during the discovery period in order to plan discovery, to retain and disclose its medical expert – as to past medical expenses only – to forego the need for an IME, to make decisions regarding settlement and to ultimately to prepare for trial.  (Dec. Entz., ¶14).

> ## 2.    Pursuant To FRCP 37(c)(1), Any Damages Not Timely Disclosed Are Automatically Excluded Unless the Failure Was "Substantially Justified" or "Harmless"

The mandatory exclusion of Rule 37(c)(1) applies unless the failure to timely disclose is substantially justified or harmless.  *Id.*; *see also Hoffman v. Constr. Protective Servs., Inc.,* 541 F.3d 1175, 1180 (9th Cir. 2008) (noting that FRCP 37(c)(1) provides such a "*self-executing, automatic sanction* to provide a strong inducement for disclosure of material[,]" and affirming decision of district court precluding presentation of undisclosed evidence of damages) (*quoting Yeti by Molly, Ltd. v. Deckers Outdoors, Inc.*, 259 F.3d 1101, 1106 (9th Cir. 2001)) (emphases added).  **Plaintiff bears the burden of proving that her failure to comply with FRCP 26(a)(1)(A)(iii) is substantially justified or harmless**.  *See Yeti by Molly*, 259 F.3d at 1106.

//

//

//

//

a.    *The District of Nevada has Repeatedly Ruled that Disclosures on or After the Expert Disclosure Deadline are Not Substantially Justified or Harmless*

**The District of Nevada routinely excludes witnesses, expert witnesses, evidence and damages disclosed on or near the expert disclosure deadline**, finding that such disclosures (1) are not harmless, given the defendant's reliance on Rule 26(a) disclosures in conducting or foregoing certain discovery and preparing for the expert disclosure deadline, and (2) not substantially justified because the plaintiff and counsel had the ability to call a treating physician or otherwise forecast at least an estimate of the future medical expenses or other damages claimed as of the initial Rule 26(a) deadline. *Smith, T. v. Wal-Mart Stores, Inc.*, No. 2:13–cv–1597–MMD–VCF, 2014 WL 3548206, at *3 (D.Nev. July 16, 2014) (excluding over $400,000 related to future surgery and excluding retained medical expert due to Plaintiff's untimely disclosure of damages months after the Rule 26(a)(1)(A)(iii) deadline, but prior to the close of discovery); *Olaya v. Wal-Mart Stores, Inc.*, 11–cv–0997, 2012 U.S. Dist. LEXIS 111079, at *10 (D.Nev. Aug. 7, 2012) (excluding $1.2 million in future medical expenses and future lost earnings because the plaintiff disclosed these damages claims days prior to the expert disclosure deadline and on the expert disclosure deadline); *Baltodano v. Walmart Stores, Inc.*, No. 10–cv–2062, 2011 U.S. Dist LEXIS 98306 (D.Nev. Aug. 31, 2011) (excluding $429,000 in future medical expenses related to fusion surgery that was NOT timely disclosed as part of Plaintiff's Computation of Damages, and instead disclosed during a deposition conducted prior to discovery's close); *Shakespear v. Wal-Mart Stores, Inc.*, No. 12–cv–1064, 2013 U.S. Dist. LEXIS 100644 (D.Nev. July 8, 2013) (excluding Plaintiff's two retained medical experts and excluding $228,000 in future medical expenses due to Plaintiff's untimely disclosure of said damages claim and supporting evidence <u>on</u> the expert disclosure deadline); *Tzvetanova v. Wal-Mart Stores, Inc.*, 2:12-cv-02069-RCJ-CWH (D.Nev. Aug. 6, 2013) (excluding expert witnesses, evidence and over $840,000 in damages claims for future cervical fusion surgery, loss of household services, loss of earning capacity, and past lost wages, for Plaintiff's

disclosure of said evidence _on_ the expert disclosure deadline); _Smith, D. v. Wal-Mart Stores, Inc._, No. 2:11-cv-01520-MMD-RJJ, 2012 WL 4051925, at * 3 (D.Nev. Sept. 13, 2012) (excluding $320,000 in damages related to a recommended fusion surgery and excluding retained medical expert who recommended surgery, due to untimely disclosure at the rebuttal expert disclosure deadline).

> b. *The District of Nevada has Likewise Ruled that Any Witnesses, Evidence or Damages Untimely Disclosed Must be Excluded, Regardless of Whether Plaintiff is "Still Treating"*

As set forth above, the District of Nevada routinely excludes witnesses, evidence and damages which are untimely disclosed _on_ the expert disclosure deadline or soon thereafter, due to the defendant's unfair surprise, the disruption of the Scheduling Order, and the expectation that at the outset of a case, a plaintiff in a simple premises liability personal injury lawsuit should be able to disclose the witnesses, evidence and damages she intends to admit at trial.  Likewise, the District of Nevada routinely excludes witnesses, evidence, and damages which are disclosed AFTER the initial disclosure deadline – regardless of whether the plaintiff was 'still treating,' given the expectation that at the outset of a case, a plaintiff who is 'still treating' would disclose a claim for future medical expenses to account for that 'ongoing treatment.

For as the Courts in this District correctly point out, Rule 26(e) prohibits the use of "supplements" to disclose ongoing medical treatment in lieu of making a claim for that projected future treatment at the outset of the case.  *Montilla v. Wal-Mart Stores, Inc.,* No. 2:13-cv-2348-GMN-VCF, 2015 WL 5458781, at * 3 (D.Nev. Sept. 16, 2015) (excluding over $86,000 in past medical expenses, accompanying records and bills, future surgery recommendation, and future damages claim due to untimely "supplements" after the close of discovery); *Patton v. Wal–Mart Stores, Inc.*, No. 2:12–cv–2142–GMN–VCF, 2013 WL 6158461, at *5 (D.Nev. Nov. 20, 2013) (excluding $129,084 in medical bills, despite the timely disclosure of the underlying treatment, because the additional bills were not disclosed until after the close of discovery); *Rios v. Wal-Mart Stores, Inc.*, No. 11–cv–1592

(D.Nev. Dec. 11, 2013) (excluding future damages related to recommended fusion surgery, because although the recommendation was disclosed during discovery period, Plaintiff failed to disclose a claim for futures at the outset of the case).

In *Montilla*, Magistrate Judge Ferenbach noted that the plaintiff's 17 supplements to her Rule 26(a) Disclosures, including "supplements" both during and after the close of discovery were incorrectly characterizing future medical expenses as accrued past medical expenses as time elapsed. Magistrate Judge Ferenbach explained that "Rule 26(e) does not create a 'loophole' for a party who wishes to revise its initial disclosures to its advantage after the deadline has passed. *Id.* at *2, citing *Luke v. Family Care and Urgent Medical Clinics*, 323 Fed.Appx. 496, 500 (9th Cir. 2009). A plaintiff cannot avoid the Rule 26(a)(1)(A)(iii) requirement to timely disclose ALL claims, then as time elapses, re-characterize future medicals as past medical expenses. *Id.* at *2.

The Court ruled:

> Rule 26(a)(1)(A)(iii) required Ms. Montilla to make a reasonable forecast of her future medical expenses by [the initial disclosure deadline]. Thereafter, Rule 26(e)(1)(A) permitted Ms. Montilla to correct any inaccuracies with her initial forecast by supplementing her initial disclosure. However, Ms. Montilla never made a claim or reasonable forecast of her future medical expenses. *Instead, as time elapsed, she re-characterized future medical expenses as past medical expenses when she received her doctors' bills*. **This was inappropriate**.

*Montilla*, No. 2:13-cv-02348-GMN-VCF, 2015 WL 5458781, at *2-3 (emphases added). Magistrate Judge Ferenbach went onto explain that "[b]ecause the rule [Rule 26(a)(1)(A)(iii)] is concerned with 'claims' and not actual cost, compliance with Rule 26(a)(1)(A)(iii) requires a party to look into the future and estimate what the party intends to claim at trial." *Id.* at *3.

Magistrate Judge Ferenbach made clear that "Rule 26(e) prohibits what Ms. Montilla did here: **leading the opposing party blindly into the future by revising her initial disclosures to her advantage after the initial-disclosure deadline expired**." *Id.* at *3 (emphasis added*), citing *Luke*, 323 Fed. Appx. At 500. As to whether this was "harmless," the Court concluded that "[t]his prevented

Walmart from being able to 'prepare for trial or make an informed decision about settlement.'" *Id.*, citing Fed. R. Civ. P. 26(a), Advisory Comm. Notes (1993).

Rejecting the plaintiff's argument that she complied with the requirements of Rule 26(a) because her supplemental disclosures "clearly indicate that [] Plaintiff is still treating," Magistrate Judge Ferenbach found that "[t]his argument fails as a matter of law. Actual cost is irrelevant under Rule 26(a). Ms. Montilla was merely required to estimate what her future medical expenses would be." *Id.* at *3.

Magistrate Judge Ferenbach also rejected the plaintiff's argument that exclusion sanctions "would require her 'to quit treating and/or quit submitting medical records merely because discovery is closed or trial is upcoming.'" *Id.* at *3. The Court ruled, "This is also incorrect. Ms. Montilla had a duty to disclose a computation of future medical expenses that she would claim at trial. Whether she continues with her treatment or whether her treatment is necessary is irrelevant under Rule 26(a)." *Id.*

In *Montilla*, the Court excluded the evidence and damages set forth in the plaintiff's untimely "supplements" to her past medical expenses, as well as her later addition of a claim for future medicals, finding that

> Ms. Montilla's failure to include a claim for future damages was neither harmless nor substantially justified…<u>Ms. Montilla continued to revise her initial disclosures in violation of Rules 26(a) and (e). This prevented Walmart from being able to make an informed decision about settlement or trial</u>. Ms. Montilla revised her initial disclosures 20 times and increased her damages from $35,586.69 to $138,873.05. <u>This untimely increase of $103,286.36 prejudices Walmart; it is tantamount to adding a new basis for liability on the eve of trial</u>.

*Id.* at *3 (emphasis added).

In *Patton*, the Court found that the plaintiff's arguments that her "ongoing treatment," the defendant's notice that she was "surgical" and the stated delays by the treaters in providing treatment bills neither excused nor rendered harmless her disclosure of additional damages, bills and records after the close of discovery. *Patton v. Wal–Mart Stores, Inc.*, No. 2:12–cv–2142–GMN–VCF, 2013

- 21 -

1    WL 6158461, at *3-5 (D.Nev. Nov. 20, 2013)

> The court finds that Patton violated Rule 26(a)'s disclosure requirements for three reasons. First, the princip[al] purpose of Rule 26(a)is to give opposing parties a reasonable opportunity to prepare for trial. [internal citation omitted]…Whether intentional or not, **Patton's failure to disclose approximately \$129,080.84 in damages <u>until after the close of discovery gives the appearance of gamesmanship</u> and has the effect of <u>impairing opposing counsel's opportunity to prepare for trial</u>**.
>
> Second, the Ninth Circuit prohibits the conduct Patton has engaged it. The Court has held that Rule 26(e), which requires litigants to supplement initial disclosures, does not create a "loophole" for a party who wishes to revise its initial disclosures to its advantage after the deadline has passed. *Luke v. Family Care and Urgent Medical Clinics,* 323 Fed. Appx. 496, 500 (9th Cir.2009) [internal citations omitted]…The inference that should be drawn from this is that because supplementation means "correcting inaccuracies," it does not permit adding additional information.
>
> Adding and not supplementing, however, is exactly what Patton did. **By waiting to disclose approximately \$129,080.84 in damages until after the close of discovery, Patton re-characterized future damages—which should have been disclosed on January 30, 2013 under Rule 26(a)(1)(A)(iii)—as past damages**, which she supplemented under Rule 26(e). This reopened the loophole that the Ninth Circuit closed. *Luke,* 323 Fed. Appx. at 500.

*Id.* at *3 (emphases added). The third basis for concluding that Patton had violated Rule 26(a) was that the District of Nevada had routinely excluded untimely disclosed evidence and damages in factually similar circumstances. *Id.*, citing *Shakespear v. Walmart Stores, Inc.,* No. 12–cv–1064 (D.Nev. July 8, 2013); *Baltodano v. Walmart Stores, Inc.,* No. 10–cv–2062 (D.Nev. Aug. 31, 2011); *Olaya v. Walmart Stores, Inc.,* 11–cv–0997 (D.Nev. Aug. 7, 2012).

Finding that the plaintiff failed to meet her burden to establish that the untimely disclosures were harmless, the Court in *Patton* rejected the plaintiff's argument that "any potential harm can be cured by reopening discovery on a limited basis." *Id.* at *4. The Court ruled that this argument "neglects the overarching purpose" of Rule 1, Rule 26(a), and Rule 37(c), which "'gives teeth' to the

disclosure requirements by implementing self-executing sanctions." *Id.* at *4, citing *Yeti by Molly, Ltd.*, 259 F.3d at 1106. The Court explained that "[i]t needs no citation of authority to recognize that discovery – even on a limited basis – is expensive. Permitting Patton to cure her violation of Rule 26(a) by reopening discovery would, in effect, violate Rule 1 and Rule 37(c)." *Id.* at *4.

The Court further agreed with the rulings in *Shakespear*, *Baltodano* and *Olaya*, finding that "untimely disclosures disrupt trial because they impede the other party's ability to marshal a timely and proportional defense." *Id.* at *5.

Walmart's counsel has spent hundreds of attorney hours and Walmart has spent substantial litigation costs, planning its discovery, retaining and disclosing its medical expert, and preparing for trial, focused on the witnesses, evidence, expert opinions, and damages that Plaintiffs did timely disclose during the discovery period. Plaintiff Pate's untimely disclosures cannot be substantially justified, where Plaintiff Pate and her attorneys certainly the ability to forecast her future care needs in her Rule 26(a)(1)(A)(iii) Disclosures. Additionally, Plaintiff Pate's untimely disclosures are certainly not harmless, where the post-discovery cut-off disclosures prevented the defendant from conducting discovery, disclosing experts or investigating these new witnesses, evidence and damages. As in *Montilla*, *Patton*, *Rios*, *Smith, T.*, *Olaya*, *Baltodano*, *Smith, D.*, *Tzvetanova*, and *Shakespear*, Plaintiff Pate's untimely disclosures of witnesses, evidence and damages in all of her post-discovery disclosures warrant self-executing exclusion sanctions pursuant to Rule 37(c)(1).

## IV.    CONCLUSION

The only means to cure the prejudice caused by Plaintiffs' unjust withholding of evidence and failure to comply with Rule 26(a)(1)(A)(i)-iii) and Rule 26(e) is to exclude from trial all witnesses, evidence and damages that were not timely disclosed per Rule 26(a)(1)(A)(i)-(iii). Rule 37(c)(1) was designed to give "teeth" to the mandatory disclosure requirements of Rule 26(a). To hold that anything but exclusion sanctions are proper would be to negate the requirements of Rule 1, Rule 26(a)

and the design of Rule 37(c)(1).

As in *Montilla*, *Patton*, *Rios*, *Smith, T.*, *Olaya*, *Baltodano*, *Smith, D.*, *Tzvetanova*, and *Shakespear*, Plaintiff Quatrela Pate's untimely disclosures of witnesses, evidence and damages cannot be harmless where they deprived Walmart of an ability to marshal a timely and proportional defense to these disclosures. Likewise, as in *Montilla*, *Patton*, *Rios*, *Smith, T.*, *Olaya*, *Baltodano*, *Smith, D.*, *Tzvetanova*, and *Shakespear*, a plaintiff's alleged need for "ongoing treatment" does not relieve a plaintiff of her Rule 26(a)(1)(A)(iii) obligations at the outset of the case, and therefore "supplements" with additional past medical expenses, as opposed to forecasting future medicals from the outset, are not 'substantially justified'.

Plaintiffs' tardy disclosures, made after the close of discovery, and after Magistrate Judge Leen refused to allow a resetting of deadlines, cannot be tolerated. If Plaintiffs' conduct is not met with exclusion sanctions, the content and requirements of Rules 26(a)(1)(A) and Rule 37(c) are rendered meaningless and non-disclosure will assuredly be the scheme of future litigants in this jurisdiction.

DATED this <u>4th</u> day of October, 2015.

**PHILLIPS, SPALLAS & ANGSTADT LLC**

*/s/ Brenda Entzminger*
_____

Brenda H. Entzminger
Nevada Bar. No. 9800
504 South Ninth Street
Las Vegas, Nevada 89101
(702) 938-1510

*Attorneys for Defendant*
*Wal-Mart Stores, Inc.*